USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/28/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------X

JOHN CHEN,

                    Petitioner,

        -against-

UNITED STATES OF AMERICA,

                    Respondent.

--------------------------------X

Nos. 11 Cr. 1038 (JFK)
14 Civ. 4987 (JFK)

**OPINION & ORDER**

APPEARANCES

FOR PETITIONER JOHN CHEN
    Pro Se

FOR RESPONDENT UNITED STATES OF AMERICA
    Rachel Maimin, Esq.

**JOHN F. KEENAN, United States District Judge:**

    Petitioner John Chen ("Petitioner" or "Chen"), an inmate of

the United States Penitentiary Terre Haute in Terre Haute,

Indiana, brings this pro se petition pursuant to 28 U.S.C. §

2255 to vacate, set aside, or correct his prison sentence.  For

the reasons stated below, the petition is denied.

## I.   Background

### A. Petitioner's Arrest and Indictment

    Between March 2011 and April 2011, Chen and three co-

defendants conspired to commit mail fraud. (Presentence

Investigation Report ¶ 16 (Oct. 22, 2012) [hereinafter PSR].)

Chen's co-defendant, who worked for an accounting firm, provided

Chen with the personal information of the accounting firm's

clients, and another co-defendant then generated credit reports

for those clients. (Id.)  Chen then used those credit reports to order credit cards in the names of the victims, which he and others used to purchase items. (Id.)  Chen was arrested on April 29, 2011 by the United States Postal Service and charged with three counts of criminal possession of stolen property. (Id. ¶ 20.)  Between April 2011 and September 2011, while Chen was incarcerated at Riker's Island, he used the prison telephone to call various credit card companies and attempt to get replacement credit cards using the name of another person. (Id. ¶ 23.)  At least once, Chen succeeded in doing so and the replacement card was mailed to a co-conspirator who used it to purchase items. (Id. ¶ 23.)  On December 6, 2011, Chen was indicted for two counts of conspiracy to commit mail fraud under 18 U.S.C. § 1341 and one count of aggravated identity theft under 18 U.S.C. § 1028A. (See Indictment ¶¶ 1-2, 4-5, 7, United States v. Chen, No. 11 Cr. 1038 (Dec. 06, 2011), ECF No. 1.) Mary Mulligan ("Mulligan") represented Chen through sentencing.

## B. The Plea Agreement

On July 31, 2012, Chen entered a plea of guilty to Counts One, Two, and Three of the Indictment, pursuant to a written plea agreement with the Government (the "Plea Agreement").  In the Plea Agreement, Chen and the Government stipulated that: (1) Counts One and Two would be treated as a single group under U.S.S.G. § 3D1.2(d); (2) the base offense level was seven under

2

U.S.S.G. § 2B1.1(a)(1); (3) an increase of twelve levels was warranted under U.S.S.G. § 2B1.1(b)(1)(G) because the loss was between $200,000 and $400,000; (4) an increase of two levels was warranted under U.S.S.G. § 2B1.1(b)(2)(A) because the offense involved ten or more victims; and (5) because of Chen's timely acceptance of responsibility, U.S.S.G. § 3E1.1(a) and (b) warranted a reduction of three levels. (See Resp't Mem. in Opp'n Ex. A at 2-3, ECF No. 97-1 (filed Dec. 16, 2014) [hereinafter Plea Agreement].)

These alterations resulted in a stipulated offense level of eighteen. (Id. at 3.) After outlining Chen's previous criminal convictions, the parties stipulated that he was in Criminal History Category IV. (Id. at 5.) Adding U.S.S.G. § 2B1.6(a)'s mandatory sentence of two consecutive years for Count Three, the Plea Agreement provided for a "Stipulated Guidelines Range" of 81 to 95 months' imprisonment. (Id.) Chen also stipulated that he would not

> file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 81 to 95 months' imprisonment.

(Id. at 6.)

On July 31, 2012, Chen appeared before the Court and entered a plea of guilty to Counts One, Two, and Three pursuant to the terms of the Plea Agreement. During the plea proceeding, Chen confirmed that he had discussed his case and his decision to plead guilty with defense counsel and was satisfied with defense counsel's representation of him. (Plea Tr. at 9-13.) The Court confirmed that Chen understood the nature of the charges against him and had discussed his decision to plead guilty with defense counsel. (Id.) Chen stated that he had read and understood the Plea Agreement and that he had entered into the agreement voluntarily. (Id. at 12-13, 22-23.) The Court then directed Chen's attention to relevant provisions of the Plea Agreement, including his waiver of appellate rights—and right to file a petition for habeas corpus relief—if sentenced to a term of imprisonment within the stipulated Guidelines range. (Id. at 19-21.) Chen indicated that he understood the rights he was waiving. (Id.)

During his allocution, Chen admitted that, from March 2011 to April 2011, he conspired to commit credit card fraud by ordering credit cards to which he was not entitled and having the cards sent through the mail. (Id. at 24-25.) He further admitted that he "fraudulently order[ed] a credit card in the name of another person" and "use[d] a real person's information

to obtain [a] credit card under their name." (<u>Id.</u> at 25.)  The
Court accepted Chen's guilty plea. (<u>Id.</u> at 27.)

### C. Petitioner's Sentencing

The Probation Office prepared a Presentence Investigation
Report ("PSR") which calculated Chen's sentencing range under
the sentencing Guidelines at 81 to 95 months in accord with the
calculation set forth in the Plea Agreement. (PSR ¶ 95.)  The
PSR included in its calculations the victim enhancement
stipulation, (<u>Id.</u> ¶ 34), identifying three financial
institutions and at least ten additional victims "whose credit
information was used." (<u>Id.</u> ¶¶ 25-26.)  The Probation Office
recommended a bottom-of-the-Guidelines sentence of 81 months'
imprisonment. (<u>Id.</u> at 22.)

On November 29, 2012, Chen appeared for sentencing.
Mulligan stated she had reviewed the PSR with Chen and had no
objections. (Sent. Tr. at 2.)  Mulligan argued that the Court
should impose a below-Guidelines sentence of 57 months because
Chen had attempted to render assistance to the Government in an
investigation during his pretrial detention and his criminal
history was overstated. (<u>Id.</u> at 3-6.)  The Government requested
that the Court impose an above-Guidelines sentence because of
(1) Chen's extensive criminal history, (2) his attempted fraud
on the Court during the course of the case, (3) his attempt to
obstruct justice during his sentencing proceeding by causing

other people to send false and fraudulent letters to the Court on his behalf, and (4) the fact that one of the charged conspiracies took place while Chen was already incarcerated. (Id. at 6-11.)  The Government urged the Court to impose a sentencing enhancement for obstruction of justice and to decline to credit Chen for acceptance of responsibility. (Id. at 10, 17.)

The Court reviewed Chen's personal history, offense conduct, and the applicable Guidelines range of 81 to 95 months' imprisonment. (Id. at 15-20, 24.)  Although the Court found that Chen's submission of fraudulent sentencing letters was "blatantly outrageous," the Court found that it did not amount to obstruction of justice and declined to remove the reduction for acceptance of responsibility. (Id. at 18.)

In light of these factors, the Court imposed a 65-month sentence on Counts One and Two (within the Guidelines range of 57-71 months) plus the mandatory, consecutive term of two years' imprisonment on Count Three, totaling an aggregate sentence of 89 months' imprisonment and three years' supervised release. (Id. at 19-20.)  Judgment was entered on December 3, 2012.

### D. Petitioner's Direct Appeal

On December 11, 2012, Chen appealed to the Second Circuit and was appointed counsel, Ryan Thomas Truskoski ("Truskoski"). On February 1, 2013, Truskoski filed a submission pursuant to

Anders v. California, 386 U.S. 738 (1967), stating that, after a diligent examination of the record, he determined that there were no meritorious grounds for appeal in this case. (Brief for App-Def Chen at vii, No. 12-4947-Cr, ECF No. 19 (Feb. 1, 2013) [hereinafter Appellant Brief].) Chen moved pro se for a new attorney on appeal. (Resp't Mem. in Opp'n at 8.) The Government moved to dismiss the appeal on the basis of the Plea Agreement and for summary affirmance on the basis that there were no non-frivolous issues to be raised on appeal. (Id.) By order dated August 23, 2013, the Second Circuit granted the Government's motions to dismiss and for summary affirmance and denied Chen's motion for appointment of new counsel. (Mandate at 2, United States v. Chen, No. 11 Cr. 1038 (Oct. 1, 2013), ECF No. 70.)

### E. Petitioner's § 2255 Motion

On June 20, 2014, Chen filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Chen raises two grounds for relief: (1) the PSR "stated only the bank[s] are the victims but the U.S. Attorney [made] the plea to 250 or less victims and I was enhance[d] a lot of points for that," and (2) his counsel was ineffective in failing to argue that the two-point victim enhancement under U.S.S.G. § 2B1.1(b)(2)(A) should not be imposed despite Chen having drawn her attention to relevant cases "about victims" in the Second Circuit. (Pet'r's Mem. at 5-6.)

In his initial petition, Chen wrote "I have cases sa[ying] [the] victims are only the financial institutions and if any person suffers a temporary loss and [i]s reimbursed by the banks, they are not the victims. The case[s] are from [the] 2nd, 5th, 6th Circuit[s]." (Id. at 5.) Chen claims that he showed Mulligan these cases, "including 2nd Circuit decision[s], and she said I am wrong." (Id. at 6.) The Government in its response claims that during plea negotiations, Mulligan, at Chen's express request, brought to the Government's attention United States v. Stubblefield, 682 F.3d 502 (6th Cir. 2012) and the Government advised Mulligan that "Stubblefield has never been cited in this District or Circuit and is not the law in this Circuit." (Resp't Mem. in Opp'n at 14.) The Government further states that the parties agreed, after thorough negotiations, that there were "well over 10 victims in this case." (Id.)

Chen asserts that if Mulligan discussed only Stubblefield with the Government, she "aband[on]ed" him and was "ineffective." (Pet'r's Reply Mem. at 3.) Chen also states that he only agreed to the victim stipulation because "his first language is Chinese" and he "depended heavily on his counsel['s] advice." (Id.) Had he known Mulligan had not raised the Second Circuit cases, he "w[ould] never [have] agree[d] to the 2 points enhancement." (Id. at 25.)

## II. Discussion

### A.    Applicable Law

Acknowledging that Chen's first language is Chinese and that he moves as a pro se litigant, this Court interprets his arguments liberally, to raise the strongest arguments that they suggest. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

A federal prisoner may challenge his sentence if it was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).  The Sixth Amendment assures criminal defendants the right to effective assistance of counsel, thus ineffective assistance is a constitutional basis for relief under § 2255. See Morales v. United States, 635 F.3d 39, 43 (2d Cir. 2011).  Demonstrating ineffective assistance of counsel requires the Petitioner to satisfy the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, the petitioner must first demonstrate that his counsel's assistance fell below an objective standard of reasonableness. 466 U.S. at 687-88.  Mindful of a wide range of reasonableness, the standard is measured under prevailing professional norms. Id. at 687-688.  Counsel have basic duties under Strickland, however these duties are not part of a checklist, and the court must engage in a deferential analysis of the totality of the circumstances. Id. at 688.  The

petitioner must overcome a "strong presumption" of reasonableness. Id. at 689. The Strickland test also applies when petitioners accept plea agreements instead of going to trial. See Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

The petitioner must also show that his counsel's inadequate assistance prejudiced the defense. Strickland, 466 U.S. at 687. To prove prejudice, the petitioner must show that there is a reasonable probability that, but for his counsel's performance, the result of the proceeding would have been different. Id. at 694. "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." Id. When challenging a plea agreement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

### B. Analysis

### 1. Waiver of Rights

A defendant may waive his right to collaterally challenge his sentence in his plea agreement if he waives it knowingly and voluntarily. See United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004). During the plea hearing, Chen represented to this Court that Mulligan had explained the Plea Agreement to him, that they had discussed it, and that he had signed it freely and voluntarily. (Plea Tr. at 12-13, 22-23.) Chen expressed his

understanding that he waived his right to file a direct appeal or "collateral challenge" if his sentence fell within or below the stipulated Guidelines range, demonstrating the knowing and voluntary nature of the waiver. (Id. at 20-21.)

Generally, a defendant who knowingly and voluntarily waives the right to appeal, in exchange for the benefit of a plea agreement, may not challenge a sentence imposed within the stipulated Guidelines range. See United States v. Salcido-Contereras, 990 F.2d 51, 53 (2d Cir. 1993). Accordingly, any challenge Chen brings to his sentence, which was within the stipulated Guidelines range in the Plea Agreement, is barred by his knowing and voluntary waiver of appeal rights.

"Claims of ineffective assistance of counsel can survive § 2255 waivers, but only when the claim relates to the negotiation and entry of a plea or sentencing agreement." United States v. Cano, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007). The Second Circuit held that:

> [T]he refusal to apply such a waiver [of
> ineffective assistance of counsel] only
> allows appellate review of the
> constitutionality of the process by which
> the plea agreement was consummated. If the
> constitutionality of that process passes
> muster, the plea agreement's waiver would
> bar any consideration by the appellate court
> of issues that fall within the scope of that
> waiver. For instance, had [the defendant]
> raised any issues about sentence, we would
> have refused to consider them.

United States v. Hernandez, 242 F.3d 110, 114 (2d Cir. 2001).

Further, claims of ineffective assistance of counsel at sentencing cannot be used to avoid the plain language of a waiver agreement. See, e.g., United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (noting that if courts "were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless"); United States v. Brickhouse, No. 09-CR-1118 (KMK), 2017 WL 1049509, at *6 (S.D.N.Y. Mar. 16, 2017) ("[T]o the extent that Petitioner quibbles with counsel's advocacy at sentencing, his claim is covered by the waiver in the Plea Agreement.").

Chen claims that his counsel was ineffective during sentencing, however he makes no argument that he did not understand the waiver in the Plea Agreement or that Mulligan's ineffectiveness affected his acceptance of the Plea Agreement as a whole. Chen's claim is that Mulligan was ineffective in failing to make an argument to the Government that the two-point victim enhancement under U.S.S.G. § 2B1.1(b)(2)(A) should not be imposed despite Chen having drawn her attention to certain cases in the Second Circuit.

However, because Chen is proceeding pro se, the Court construes his petition liberally and interprets it to raise the strongest argument it suggests—namely that his counsel was

ineffective in negotiating the terms of his plea agreement. See, e.g., Negroni v. United States, 2017 WL 3300529, at *4 (D. Conn. Aug. 2, 2017) (pro se petitioner could overcome an otherwise valid appeal waiver by raising an ineffective assistance claim with respect to advice he received in the process of accepting his plea).

Nevertheless, as discussed below, Chen's ineffective assistance of counsel claim fails on the merits. Thus, as Chen's sentence was within the stipulated Guidelines range, his waiver was valid and enforceable.

## 2. Failure to Raise Ineffective Assistance Claims on Direct Appeal

Failing to raise an issue on direct appeal serves as a procedural bar to bringing it in a collateral attack. See Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992). A petitioner must show cause and prejudice to excuse prior failure to raise a constitutional issue. See id.; see also United States v. Frady, 456 U.S. 152, 168 (1982) (requiring cause and prejudice for petitioner's "double procedural default" at trial and on appeal). "[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." Murray v. Carrier, 477 U.S. 478, 492 (1986). "Mere [a]ttorney ignorance or inadvertence is not 'cause,' but a petitioner may

establish cause by demonstrating that his counsel's performance was constitutionally deficient." Pena v. United States, No. 09-CR-0341 (VM), 2017 WL 3283954, at *3 (S.D.N.Y. June 30, 2017) (internal quotation marks omitted).  Where, as here, the defendant had new appellate counsel on direct appeal and the ineffective assistance claim is based solely on the trial record, the petitioner must still show cause for not bringing the ineffective assistance claim on direct appeal and prejudice resulting therefrom. Hernandez v. United States, No. 02 CV. 1663 (JGK), 2003 WL 223467, at *2 (S.D.N.Y. Jan. 31, 2003).

Chen claims that he did not raise his claim for ineffective assistance on appeal because Truskowski "put in the [Anders] brief without [his] permission, "only raise[d] a limited issue" in the Anders brief, and "basically [] said [Chen] [had] no ground[s] [for] appeal." (Pet'r's Mem. at 6-7.)  Chen further states in his petition that "the 2nd Circuit [did] not allow [him] to withdraw [the Anders brief] and re-appoint [a new] lawyer." (Id. at 7.)  However, courts in this District have held that an appellate counsel's filing of an Anders brief does not justify a petitioner's failure to raise claims of ineffective assistance on direct appeal "because that counsel did nothing to prevent [petitioner] from filing [a] pro se brief." Jorge v. United States, 818 F. Supp. 55, 57 (S.D.N.Y. 1993).

Moreover, even if Chen could show cause for failure to raise his claims on direct appeal, he has not shown prejudice. "To establish 'prejudice,' petitioner must show a reasonable probability that, but for the alleged violation of federal law, the outcome of his case would have been different." Restrepo v. Kelly, 178 F.3d 634, 638 (2d Cir. 1999). Because, as discussed below, Chen's arguments are meritless, he has not demonstrated a reasonable probability that, had Truskowski only raised an issue with the effectiveness of Chen's trial counsel on direct appeal, the outcome of his case would have been different.

## C. Chen's Petition Fails on the Merits

Even if Chen's petition was not procedurally barred by the waiver in his plea agreement or by his failure to raise these issues on direct appeal, his arguments fail on the merits.

### 1. Guidelines Range Miscalculation

The Court construes Chen's petition to argue that the stipulated Guidelines range in the Plea Agreement was miscalculated because it included a two-point enhancement for ten or more victims under U.S.S.G. § 2B1.1(b)(2)(A) even though the only "victims" of Chen's scheme were financial institutions. The PSR states that Chen and his co-defendants "possessed, used and transferred the personal identification information of other persons" and that "[i]n addition to the banks that sustained losses, Chen and his co-conspirators['] actions [a]ffected at

least 10 victims whose credit information was used." (PSR ¶¶ 24-25.)  In his reply brief, Chen discusses at length several cases which he claims support his argument that if "victims are only the financial institution[s], and if any person suffers a temporary loss and [is] reimbursed by the bank, they are not the victims." (Pet'r's Mem. at 5.)  Chen specifically argues that Mulligan should have discussed with the Government two of these cases:  United States v. Abiodun, 536 F.3d 162 (2d Cir. 2008), and United States v. Mohammed, 315 F. Supp. 2d 354 (S.D.N.Y. 2003), both decided in this Circuit. (Pet'r's Reply Mem. at 25.) The PSR does not explain when or if these victims were fully reimbursed by their financial institutions.

In United States v. Abiodun, 536 F.3d 162 (2d Cir. 2008), and United States v. Mohammed, 315 F. Supp. 2d 354 (S.D.N.Y. 2003), the two cases that Chen allegedly brought to Mulligan's attention,[1] the courts held that individuals who are immediately reimbursed for their losses by financial institutions cannot be considered victims for purposes of the enhancement under

---

[1] In his reply brief, Chen also cites the Second Circuit case United States v. Lacey, 699 F.3d 710 (2d Cir. 2012), for the proposition that a "victim" is a person who suffered pecuniary harm. (Pet'r's Reply Mem. at 4.)  However, the defendant in Lacey received a two-level enhancement for an offense "committed through mass-marketing" under U.S.S.G. § 2B1.1(b)(2)(A)(ii). Lacey, 699 F.3d at 714.  The Court held that "the mass-marketing enhancement is properly applied only when the targets of the mass-marketing are also in some way victims of the scheme." Id.  The mass-marketing enhancement was not applied to Chen's stipulated Guidelines range, thus, Lacey is not relevant here.

U.S.S.G. § 2B1.1 unless they suffered actual monetary loss. See
Abiodun, 536 F.3d at 168-69; Mohammed, 315 F. Supp. 2d at 361-
62. However, in 2009, after the decisions in Abiodun and
Mohammed and before Chen was indicted and sentenced, the
definition of "victim" in § 2B1.1 was expanded "partly in
response to Abiodun," to include "any individual whose means of
identification was used unlawfully or without authority."
United States v. Jesurum, 819 F.3d 667, 671 (2d Cir. 2016). The
Sentencing Commission explained that:

> [T]he amendment amends the Commentary to § 2B1.1
> to provide that . . . an individual whose means
> of identification was used unlawfully or without
> authority is considered a 'victim' . . . . An
> identity theft case may involve an individual
> whose means of identification was taken and used
> but who was fully reimbursed by a third party
> (e.g., a bank or credit card company). Some
> courts have held that such an individual is not
> counted as a 'victim' for purposes of the victims
> table at § 2B1.1(b)(2). See . . . United States
> v. Abiodun, 536 F.3d 162 (2d Cir. 2008) . . . .
> The Commission determined that such an individual
> should be considered a 'victim' for purposes of
> subsection (b)(2) because such an individual,
> even if fully reimbursed, must often spend
> significant time resolving credit problems and
> related issues, and such lost time may not be
> adequately accounted for in the loss calculations
> under the guidelines.

U.S.S.G. app. C., Vol. III, amend. 726, at 309-310.

The PSR clearly states that Chen's actions affected "at
least 10 victims whose credit information was used" as part of
Chen's fraudulent scheme. (PSR ¶ 25.) Accordingly, Chen's

argument that "if any person suffers a temporary loss and [i]s reimbursed by the banks, they are not the victims" under U.S.S.G. § 2B1.1(b)(2) is unavailing, and he has failed to show that the stipulated Guidelines range was miscalculated.

## 2. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel fails unless a defendant satisfies the two-part inquiry set forth in Strickland v. Washington, 466 U.S. 668 (1984). A petitioner must show that (1) his counsel's representation "fell below an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," that is, show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. 668, at 687-88, 693-94.

Chen has not satisfied either prong of the two-part Strickland inquiry. First, he has not shown that Mulligan's counsel was ineffective.[2] Chen claims that during the plea negotiation he brought to Mulligan's attention four cases regarding the two-point victim enhancement, but that Mulligan "only brought up the Stubblefield case" with the Government. (Pet'r's Reply Mem. at 25.) Chen argues that when the

---

[2] To the extent that Chen were to argue that he was denied effective assistance of counsel on appeal, "[t]he filing of an Anders brief does not in itself constitute ineffective assistance of counsel." Jorge v. United States, 818 F. Supp. 55, 57 (S.D.N.Y. 1993).

Government informed Mulligan that Stubblefield "is not in this district," Mulligan "should [have] immediately brought up the Mohammed and Abiodun cases which [were] decided by this Circuit." (Id.) As an initial matter, "[t]he Supreme Court long ago made clear that the Sixth Amendment does not require counsel to raise every non-frivolous argument a client requests." Weingarten v. United States, 865 F.3d 48, 53 (2d Cir. 2017). Courts on collateral review may not "second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every 'colorable' claim suggested by a client." Jones v. Barnes, 463 U.S. 745, 754 (1983).

Further, as discussed above, the two-point victim enhancement under U.S.S.G. § 2B1.1(b)(2)(A) was properly applied to Chen's stipulated Guidelines range. Thus, Chen has not shown that Mulligan's failure to discuss Abiodun and Mohammed with the Government was in any way ineffective. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), disapproved on other grounds, Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 403 n.8 (2003) ("Failure to make a meritless argument does not amount to ineffective assistance.").

Second, Chen has not shown prejudice. "In the context of a guilty plea, this standard is read to require a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial."

Padilla v. Keane, 331 F. Supp. 2d 209, 215 (S.D.N.Y. 2004).

"With respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013).

Chen claims that "if [he] knew [his] attorney never discuss[ed] the 2 other cases [regarding victim-enhancement] which w[ere] decided by the 2nd Circuit, I w[ould] never [have] agree[d] to the 2 points enhancement." (Pet'r's Reply Mem. at 25.) Chen has not shown that had it not been for Mulligan's alleged error in declining to discuss specific cases with the Government, he would have foregone his guilty plea and proceeded to trial. Nor has Chen shown a reasonable probability that he would have received a less severe sentence had he proceeded to sentencing in the absence of a plea agreement, which, as the Government points out, included benefits that significantly lowered his sentencing exposure due to Mulligan's negotiations with the Government. (Resp't Mem. in Opp'n at 15.) Thus, Chen has failed to show that Mulligan's counsel was ineffective.

## Conclusion

For the reasons described above, Chen's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied. There is no need for an evidentiary hearing because

"the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

The Court declines to issue a certificate of appealability because Chen has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>Krantz v. United States</u>, 224 F.3d 125, 127 (2d Cir. 2000). Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to close the case and enter judgment for the Government.

**SO ORDERED.**

Dated:     New York, New York
           September 28 , 2017

                                    _John F. Keenan_
                                    John F. Keenan
                                United States District Judge